Robert F. Balkenbush, Esq.
State Bar No. 1246
Thorndal, Armstrong,
Delk, Balkenbush & Eisinger
6590 S. McCarran Blvd. #B
Reno, Nevada 89509
Telephone: (775) 786-2882
Fax No.:   (775) 786-8004
E-Mail:   rbalkenbush@thorndal.com
Attorneys for Plaintiff
SAFETY MUTUAL CASUALTY CORPORATION

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SAFETY MUTUAL CASUALTY
CORPORATION,

        Plaintiff,

vs.

CLARK COUNTY, NEVADA, and
DOES 1 through 50, inclusive,

        Defendants.

_____/

Case No.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, SAFETY MUTUAL CASUALTY CORPORATION as and for its complaint hereby alleges as follows:

## THE PARTIES

1.     SAFETY MUTUAL CASUALTY CORPORATION (hereinafter "SMCC") is and at all relevant times herein was a specific excess and aggregate excess workers' compensation insurance company organized under the laws of the State of Missouri, with its principle place of business in St. Louis, Missouri, and authorized to do business as such an insurer in the state of Nevada.  SMCC is currently known as Safety National Casualty Corporation.

2.   SMCC is informed and believes and thereon alleges that defendant CLARK COUNTY, NEVADA ( hereinafter "CLARK COUNTY") is and was at all times relevant herein a governmental entity, and a self-insured employer for workers' compensation benefits.

3.   Defendants DOES 1 through 50, inclusive, are sued herein under fictitious names.  Their true names, capacities and respective liabilities are unknown to SMCC at this time.  When their true names, capacities and respective liabilities are ascertained, SMCC will seek leave to amend this Complaint to insert their respective true names, capacities and liabilities herein.

4.   SMCC is informed and believes and thereon alleges that each defendant designated as "DOE" is in some manner liable or responsible to SMCC and/or involved in some manner on the facts alleged herein.

## JURISDICTION AND VENUE

5.   Diversity Jurisdiction is conferred by 28 U.S.C. § 1332 and is established in that complete diversity exists between SMCC and Defendants and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00).

6.   Venue is proper in this district under 28 U.S.C. §1391 because all or substantially most of the events giving rise to the claim occurred within this district.

## GENERAL ALLEGATIONS

A.   **The Underlying Workers' Compensation Claims**

7.   This insurance coverage dispute arises out of two underlying workers' compensation claims that arose from events that took place in Clark County.  The first claim involves the1990 workers' compensation claim of Lloyd Johnson, and the second claim involved the1990 workers' compensation claim of Michael Lucas (hereinafter collectively "underlying claims").

8.   Concerning the Lloyd Johnson claim, SMCC is informed, believes and thereon alleges

that Mr. Johnson was employed by Clark County as a firefighter for five (5) or more continuous years, and in October 2000 suffered a work-related exposure(s) to smoke and fire byproducts, and, thereafter, in 2001, was medically determined to be permanently and totally disabled.  SMCC is further informed, believes and thereon alleges that previous to this exposure, indeed from some date in 1996 to the date of the October 2000 smoke and fire byproducts exposure, Lloyd Johnson was employed by and working for CLARK COUNTY.  SMCC is further informed, believes and thereon alleges that shortly after the referenced October 2000 work-related exposure, Lloyd Johnson submitted a workers' compensation claim(s) to CLARK COUNTY for the consequences of this exposure, and CLARK COUNTY denied coverage of this claim, but later, independent of SMCC, assigned the costs of the permanent total disability to Mr. Johnson's 1990 workers' compensation claim against CLARK COUNTY.  SMCC is informed, believes and thereon alleges that Mr. Johnson's 1990 claim was closed in 1996 with a permanent partial disability award.

9.    Concerning the Michael Lucas claim, SMCC is informed, believes and thereon alleges that Mr. Lucas was employed by Clark County as a firefighter for five (5) or more continuous years, and in or around the year 2000 he suffered work-related angina pectoris, and, thereafter, in 2001, was determined to be permanently and totally disabled from work-related heart disease.  SMCC is further informed, believes and thereon alleges that previous to his year 2000 experience of work-related angina pectoris, indeed from some date in 1992 or 1993 to his year 2000 experience of work-related angina pectoris, Michael Lucas was employed by and working for CLARK COUNTY.  SMCC is further informed, believes and thereon alleges that Michael Lucas submitted a workers' compensation claim to CLARK COUNTY for the consequences of his year 2000 work-related angina pectoris, and CLARK COUNTY denied coverage of this new claim, and, later, independent of SMCC, assigned the costs of the permanent total disability to Mr. Lucas' 1990 claim against

CLARK COUNTY.  SMCC is informed, believes and thereon alleges that Mr. Lucas' 1990 claim was closed in 1992 with a permanent partial disability award.

10.    SMCC is informed, believes and thereon alleges that there was a financial advantage to be gained by CLARK COUNTY in its assignment of the costs of the year 2001 permanent  total disabilities of Mr. Johnson and Mr. Lucas to the respective 1990 workers' compensation claims made by Mr. Johnson and Mr. Lucas against CLARK COUNTY.  In this regard, SMCC is informed, believes and thereon alleges that if the year 2001 permanent  total disabilities of Mr. Johnson and Mr. Lucas were opened as new workers' compensation claims, as opposed to being assigned to the 1990 workers' compensation claims, CLARK COUNTY would have been required to pay a new self-insured retention for each permanent total disability, before the respective excess insurer for each year 2001 permanent total disability would  have been obligated to reimburse CLARK COUNTY for the loss represented by each permanent total disability.  SMCC is further informed, believes, and thereon alleges that the new self-insured retention for each year 2001 permanent total disability was at least $250,000.00 and more likely $350,000.00 to $750,000.00.  In respect of the year 2001 permanent total disabilities of Mr. Johnson and Mr. Lucas, SMCC is informed, believes and thereon alleges that CLARK COUNTY was represented by the same attorney, and Mr. Johnson and Mr. Lucas were represented by the same attorney.

**B.     The Insurance Policies**

11.    SMCC issued  specific excess and aggregate excess workers' compensation insurance agreements or policies to CLARK COUNTY for the years 1986 through 1990. *See Exhibit No. 1 hereto annexed.*  Insurance Agreement or Policy No. AGC-1349-NV was effective June 30, 1986 to June 30, 1987; and, thereafter, this agreement or policy was renewed on its anniversary date for each of the subsequent three years so as to encompass the following respective policy periods:

- 4 -

June 30, 1987 to June 30, 1988; June 30, 1988 to June 30, 1989; and June 30,1989 to June 30, 1990. Subject to all of the terms and conditions therein, each SMCC Insurance Agreement or Policy provided excess workers' compensation insurance coverage to CLARK COUNTY for covered liability in excess of CLARK COUNTY's self-insured retention for each occurrence ($250,000.00) within a respective insurance agreement or policy period, subject to a maximum limit of indemnity per occurrence.

**C.   The Coverage Dispute Between SMCC and Clark County**

12.   Insurance coverage under each SMCC Insurance Agreement or Policy at issue in this action (hereinafter "SMCC Policies") applies only to "loss" sustained by CLARK COUNTY because of liability imposed upon CLARK COUNTY by the workers' compensation laws of Nevada on account of bodily injury or occupational disease due to  "occurrences" taking place within the liability period of each respective policy to employees of CLARK COUNTY engaged in certain business operations specified in each policy.

13.   The SMCC Policies define "occurrence" with respect to bodily injuries to mean accident; and an occupational disease sustained by each employee is deemed to be a separate occurrence taking place upon the date the employee ceases work as a result of such disease or upon the date established by the workers' compensation laws of Nevada.

14. The   SMCC Policies define "loss" to mean actual payments made by CLARK COUNTY to employees and their dependents in satisfaction of (1) statutory benefits; (2) settlements of suits and claims; and (3) awards and judgments.

15.   The SMCC Policies obligate CLARK COUNTY to provide timely notice to SMCC of any workers' compensation claim commenced against CLARK COUNTY which exceeds or is likely to exceed fifty percent (50%) of the self-insured retention for each occurrence within a

respective policy period, and the reopening of any claim in which a further award of benefits might involve the liability of SMCC.  Failure to provide such notice may result in the disclaimer of excess coverage for the particular claim.

16.    The SMCC Policies obligate CLARK COUNTY to provide SMCC the opportunity to defend or participate with CLARK COUNTY in the defense of any workers' compensation claim, if, in the opinion of SMCC, its liability under the SMCC excess policy might be involved.

17.    The SMCC Policies obligate CLARK COUNTY to use diligence, prudence and good faith in the investigation, defense and settlement of all claims, and the SMCC Policies further obligate CLARK COUNTY not to make or agree to any settlement for any sum which would involve the limits of  SMCC's liability under the SMCC policies without the approval of SMCC.

18.    The SMCC Policies obligate CLARK COUNTY to fully comply with all terms of the excess insurance agreement as a condition precedent to SMCC's liability under the policies.  In this regard, the SMCC Policies further provide that by accepting the SMCC policies, CLARK COUNTY agrees that statements in the excess insurance agreement, including endorsements, Declarations, and the application for excess insurance are CLARK COUNTY's representations; and that the excess insurance agreement is issued by SMCC in reliance upon such representations, and that the insurance agreement embodies all agreements existing between CLARK COUNTY and SMCC, or any of its agents, relating to such excess insurance.

19.    The SMCC Policies exclude coverage of any "loss" voluntarily assumed by CLARK COUNTY under any contract or agreement, express or implied, except for immediate medical relief as may be imperative at the time any injury  is sustained by such an employee of CLARK COUNTY.

20.    SMCC contends, and CLARK COUNTY disputes, that the permanent total disabilities of Lloyd Johnson and Michael Lucas arising in the year 2001, and other workers'

compensation benefits related thereto, are not covered under the SMCC excess polices at issue in this action. In this regard, CLARK COUNTY has thus far requested SMCC to reimburse to CLARK COUNTY a sum in the range of 145,000.00 to $150,000.00 for these disabilities and related benefits.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief re: Duty to Indemnify Against Clark County Only)**

21.     SMCC refers to and incorporates by reference Paragraphs 1 through 20, inclusive as though fully set forth herein.

22.     SMCC is informed, believes and thereon alleges that an actual and justiciable controversy has arisen and now exists between SMCC and CLARK COUNTY concerning their respective rights, duties and obligations under the SMCC Policies at issue herein. SMCC contends, and CLARK COUNTY disputes, that it has no duty to indemnify CLARK COUNTY, under the SMCC Policies at issue herein for the permanent total disabilities of Lloyd Johnson and Michael Lucas arising in the year 2001, and for other workers' compensation benefits related to these permanent total disabilities.

23.     SMCC is informed, believes and thereon alleges that a judicial declaration is necessary and appropriate at this time so that SMCC and CLARK COUNTY may ascertain the rights, duties and obligations under the SMCC Policies with respect to SMCC's duty to indemnify CLARK COUNTY for the permanent total disabilities of Lloyd Johnson and Michael Lucas arising in the year 2001, and for other workers' compensation benefits related to these permanent total disabilities.

24.     SMCC seeks a judicial declaration that it has no duty under the SMCC Policies at issue herein to indemnify CLARK COUNTY for the permanent total disabilities of Lloyd Johnson and Michael Lucas arising in the year 2001, and for other workers' compensation benefits related

to these permanent total disabilities.

## **PRAYER**

WHEREFORE, Plaintiff SMCC asks for judgment against Defendants, and each of them, and seeks the following relief from this Court:

1.     On the First Claim for Relief, a judicial declaration and determination that SMCC has no duty under the applicable SMCC Policy to indemnify CLARK COUNTY, under the umbrella of the 1990 workers' compensation claims of Lloyd Johnson and Michael Lucas, for the permanent total disabilities of Mr. Johnson and Mr. Lucas arising in the year 2001, and for other workers' compensation benefits related to these permanent total disabilities.

2.     For an award of SMCC's costs in this action; and

3.     For such other and further relief as the Court deems just and proper.

Dated this _24th_ day of March, 2010.

ROBERT F. BALKENBUSH, ESQ.
Attorneys for Plaintiff

# EXHIBIT 1

No. AGC  -1349-NV

**SPECIFIC EXCESS AND AGGREGATE EXCESS**
**WORKERS' COMPENSATION INSURANCE AGREEMENT**

# SAFETY MUTUAL CASUALTY CORPORATION

## ST. LOUIS, MISSOURI

*(hereinafter called the CORPORATION)*

Does hereby agree with the EMPLOYER named in the Declarations (hereinafter called the EMPLOYER), in consideration of the payment of premium and subject to all the terms of this Agreement, as follows:

**A. Coverage of Agreement**

This Agreement applies only to Loss sustained by the EMPLOYER because of liability imposed upon the EMPLOYER by the Workers' Compensation or Employers' Liability Laws of:

(1) the jurisdiction(s) designated in the Declarations, or

(2) other jurisdiction(s), provided that the "Loss" shall not be greater than it would have been had liability been imposed by the jurisdiction(s) specified in the Declarations,

on account of bodily injury or occupational disease due to Occurrences taking place within the Liability Period to Employees of the EMPLOYER engaged in the business operations specified in the Declarations and all other operations necessary, incident or appurtenant thereto.

The insurance afforded by this Agreement applies to operations in the jurisdiction(s) specified in the Declarations including, however, incidental operations conducted by Employees who are regularly engaged in operations in the specified jurisdiction(s) but who may be temporarily outside the specified jurisdiction(s).

In no event shall the CORPORATION be liable for any Loss or Claim Expenses voluntarily assumed by the EMPLOYER under any contract or agreement, express or implied, except for the expense incurred by the EMPLOYER in providing such immediate medical relief as may be imperative at the time any injury is sustained by an Employee.

In no event shall this Agreement apply to Loss or Claim Expenses for which the EMPLOYER carries a full coverage Workers' Compensation and Employers' Liability policy.

**B. Specific Excess Insurance**

With respect to each Occurrence taking place within a Liability Period, the EMPLOYER shall retain as its own Loss, as defined below, the amount specified in Item 7 of the Declarations, and the CORPORATION agrees to reimburse the EMPLOYER against such Loss in excess of such Self-Insured Retention, subject to the Maximum Limit of Indemnity Per Occurrence, or the Employers' Liability Maximum Limit of Indemnity Per Occurrence, whichever is applicable, as specified in Item 8 of the Declarations. The separate Employers' Liability Maximum Limit of Indemnity Per Occurrence shall not operate, in any case, to increase the total amount the CORPORATION agrees to reimburse the EMPLOYER for Loss per any one Occurrence beyond the Maximum Limit of Indemnity Per Occurrence as per Item 8 (a) of the Declarations.

**C. Aggregate Excess Insurance**

The CORPORATION further agrees to indemnify the EMPLOYER for Loss on account of all Occurrences taking place within such Liability Period (but excluding Loss per Occurrence in excess of the amount specified in Item 7

of the Declarations as the EMPLOYER's Self-Insured Retention under Section B) which is in excess of an aggregate amount, hereinafter called Loss Fund, determined for each Liability Period as provided below, subject to the Maximum Limit of Indemnity as specified in Item 11 of the Declarations.

**D. Claim Expense Indemnity**

The CORPORATION agrees, with respect to each Occurrence, to indemnify the EMPLOYER for that proportion of Claim Expenses paid by the EMPLOYER that the amount of the Loss ultimately borne by the CORPORATION by reason of Section B bears to the total amount of Loss.

Such Claim Expenses not borne by the CORPORATION in accordance with the above paragraph shall be treated as "Loss" for the purposes of Aggregate Excess Insurance under Section C. Such "Loss" derived from Claim Expenses shall be covered by Aggregate Excess Insurance without regard to the Self-Insured Retention Per Occurrence limitation as expressed in Section C. However, all Losses shall be subject to the Maximum Limit of Indemnity of the CORPORATION for the Liability Period as per Item 11 of the Declarations.

**E. Definitions**

(1) "Loss" - shall mean actual payments made by the EMPLOYER to Employees and their dependents in satisfaction of (a) statutory benefits, (b) settlements of suits and claims, and (c) awards and judgments. The term "Loss" shall not include "Claim Expenses" or other items specifically excluded by Paragraph 3 of this section.

(2) "Claim Expenses" — shall mean interest upon awards and judgments and the reasonable costs of investigation, adjustment, defense and appeal (provided that the prosecution of such appeal be approved by the CORPORATION) of claims, suits or other proceedings brought against the EMPLOYER under the Workers' Compensation or Employers' Liability Laws of the jurisdiction(s) designated in the Declarations, or other jurisdiction(s) as provided in Section A, for bodily injury or occupational disease sustained during the respective Liability Period by the Employees engaged in the business operations to which this Agreement applies, even though such claims, suits, proceedings or demands be wholly groundless, false or fraudulent, provided the CORPORATION be promptly notified of every such claim, suit or proceeding and be given the opportunity to participate in the defense. Claim Expenses shall not include fees to the EMPLOYER's Service Company.

(3) "Exclusions from Loss" — shall refer to the following amounts paid by the EMPLOYER and specifically excluded from the term "Loss":

1084-0500-C2M

(a) Salaries, wages and remuneration provided to Employees.
(b) Fees to the EMPLOYER'S Service Company.
(c) Punitive damages assessed against the EMPLOYER on account of injuries sustained by an Employee or because of the conduct of the EMPLOYER or its designated representative(s).
(d) Fines or penalties assessed against the EMPLOYER for any violation by the EMPLOYER or its representative(s) of any statute or regulation, or as a result of any proceedings brought by or against any Employee of the EMPLOYER.
(e) Injury sustained by any Employee in, upon, entering or alighting from any EMPLOYER owned or leased aircraft unless the EMPLOYER notifies the CORPORATION of the acquisition of the aircraft within thirty (30) days from the date of purchase or lease. Upon purchase or lease the CORPORATION may charge an additional premium. Lease shall mean any rental, the duration of which is thirty (30) days or greater. However, this exclusion shall not apply if coverage is intended as evidenced by inclusion in Item 6 of the Declarations.

(4) "Loss Fund" — shall be the greater of (a) the product of the Loss Fund Percentage, as stated in Item 9 of the Declarations, and the Manual or Standard Premium, whichever is applicable, as stated in Item 6 of the Declarations, or (b) the Minimum Loss Fund specified in Item 10 of the Declarations. (See Section H for the determination of the Manual or Standard Premium.)

(5) "Occurrence" — with respect to bodily injuries shall mean accident. Occupational disease sustained by each Employee shall be deemed to be a separate Occurrence taking place upon the date the Employee ceases work as a result of such disease or upon the date established by the Workers' Compensation and Employers' Liability Laws of the appropriate jurisdiction.

(6) "Employee" — as respects liability imposed upon the EMPLOYER by the Workers' Compensation Law of any state, the word "Employee" shall mean any person performing work which renders the EMPLOYER liable under the Workers' Compensation Law of a state named in Item 2 of the Declarations, which is the state of the injured Employee's normal employment, for bodily injuries or occupational disease sustained by such person.

## F. Reimbursement

If the EMPLOYER pays any Loss incurred in any Liability Period in excess of the Self-Insured Retention Per Occurrence or the Loss Fund created for the respective Liability Period, the CORPORATION shall reimburse the EMPLOYER upon receipt of evidence acceptable to the CORPORATION of such payment. Within a reasonable period of time, reimbursement payments shall be made periodically or in lump sum total, as requested by the EMPLOYER.

The CORPORATION shall have, and may exercise at any time and from time to time, the right to offset any balance or balances, whether on account of premiums or otherwise, due from the EMPLOYER to the CORPORATION against any balance or balances, whether on account of Losses or otherwise, due from the CORPORATION to the EMPLOYER under this Agreement.

## G. Liability Period

The liability of the CORPORATION for Loss hereunder shall be determined separately for each Liability Period. The initial Liability Period shall commence at 12:01 A.M. on the Effective Date and end at 12:01 A.M. on the Anniversary Date, designated in Items 3 and 4 respectively, of the Declarations. Each succeeding Liability Period shall begin concurrently with the end of the previous Liability Period and continue for the same number of consecutive months as the initial Liability Period. All time is stated in local time for the jurisdiction(s) designated in the Declarations.

## H. Premium

Upon acceptance of the Agreement and at the beginning of each Payroll Reporting Period, as specified in Item 15 of the Declarations, the EMPLOYER shall pay to the CORPORATION the amount of the Deposit Premium specified in Item 14 of the Declarations. The Deposit Premium shall be held by the CORPORATION until expiration of the Payroll Reporting Period. Within thrity (30) days after the close of each Payroll Reporting Period, the EMPLOYER shall render to the CORPORATION a report, upon a form satisfactory to the CORPORATION, showing, by classification, the amount of such remuneration earned by Employees during such reporting period, and the EMPLOYER shall therewith pay to the CORPORATION the excess of the Earned Premium over the Deposit Premium previously paid. In case the Deposit Premium paid exceeds the Earned Premium, the CORPORATION shall return to the EMPLOYER the amount of such excess or give appropriate credit.

Upon expiration of a Liability Period, a final accounting for such period shall be made of the Earned Premium under this Agreement. In no event, however, shall the Earned Premium in respect of any Liability Period be less than the Minimum Premium specified in the Declarations.

For each Payroll Reporting Period, the CORPORATION shall compute the Earned Premium as follows:

(1) Remuneration — The remuneration earned, or manhours accumulated, during such period by all Employees engaged in each classification covered by this Agreement shall be computed in accordance with the rules set forth in the appropriate Manual of Workers' Compensation and Employers' Liability Insurance.

(2) Manual and Standard Premium — The remuneration, or manhours, so computed for Employees engaged in each such classification shall be multiplied by the Manual Rate per $100 of Remuneration/Manhour, stated in the Declarations for such classification, and the products so obtained shall be added together to determine the Manual Premium. An Experience Modification Factor may be applied to the Manual Premium to determine a Standard Premium. Such Experience Modification Factor shall be determined at the inception of this Agreement and/or at any Anniversary Date. A Standard Premium takes precedence over any Manual Premium.

(3) Earned Premium — Against the Manual or Standard Premium shall be applied the Premium Rate, as specified in Item 12 of the Declarations, to determine the appropriate Earned Premium.

This Agreement is issued by the CORPORATION and accepted by the EMPLOYER subject to the agreement that, any change in the Rates per $100 Remuneration/Manhour, as stated in Item 6 of the Declarations, because of any general rate increase or any legislative amendment affecting the benefits under the Workers' Compensation Law of any jurisdiction(s) named in Item 2 of the Declarations, such change, upon the effective date thereof, shall be, without endorsement, made a part of this Agreement.

## I. Self-Insured

The EMPLOYER, by acceptance of this Agreement, warrants that it is a duly qualified Self-Insurer in the jurisdiction(s) designated in the Declarations, and will continue

to maintain such qualifications during the currency of this Agreement. In the event the EMPLOYER should at any time while this Agreement is in force terminate such qualifications or if they should be cancelled, or revoked, such loss of qualification shall operate as notice of cancellation of this Agreement by the EMPLOYER, subject to the additional terms of the Cancellation Section of this Agreement.

### J. Service and Administration

This Agreement contemplates the concurrent and continued existence of a separate service agreement between the EMPLOYER and the Service Company named in Item 5 of the Declarations providing services approved by the CORPORATION.

Cancellation of the service agreement between the Service Company and the EMPLOYER shall operate as notice of cancellation of this Agreement by the EMPLOYER, subject to the additional terms of the Cancellation Section of this Agreement.

### K. Timely Reporting of Claims

As soon as the EMPLOYER becomes aware, the EMPLOYER must provide timely notice to the CORPORATION of, (a) any claim or action commenced against the EMPLOYER which exceeds or is likely to exceed fifty percent (50%) of the Self-Insured Retention Per Occurrence specified in Item 7 of the Declarations; and (b) the reopening of any claim in which a further award might involve liability of the CORPORATION under this Agreement.

In addition, the following categories of claims shall be reported to the CORPORATION immediately, regardless of any question of potential involvement of the CORPORATION:

1. Fatalities;
2. Paraplegics and quadriplegics;
3. Serious burns;
4. Brain injury;
5. Spinal cord injury;
6. Amputation of a major extremity; and
7. Any Occurrence which results in serious injury to two or more Employees.

Failure to render timely notice of any claim in a prompt, established manner to the CORPORATION by the EMPLOYER, or its designated representative(s), may result in the disclaimer of coverage for the particular claim.

### L. Defense of Claims

The EMPLOYER shall investigate and settle or defend all claims and shall conduct the defense and appeal of all actions, suits and proceedings commenced against it. The EMPLOYER shall forward promptly to the CORPORATION copies of any pleadings or reports as may be requested. The CORPORATION shall not be obliged to assume charge of the defense, appeal or settlement of any claim, suit or proceeding brought against the EMPLOYER, but the CORPORATION shall be given the opportunity to defend or participate with the EMPLOYER in the defense of any claim, if, in the opinion of the CORPORATION, its liability under this Agreement might be involved.

### M. Good Faith Settlement

The EMPLOYER shall use diligence, prudence and good faith in the investigation, defense and settlement of all such claims and shall not unreasonably refuse to settle any claim which, in the exercise of sound judgment, should be settled, provided, however, that the EMPLOYER shall not make or agree to any settlement for any sum which would involve the limits of the CORPORATION's liability hereunder without the approval of the CORPORATION.

### N. Inspection and Audit

The CORPORATION shall have the right to inspect the premises, equipment, books and records, including all records relating to payroll and claims matters, of the EMPLOYER and of its agents and representatives at any reasonable time during the period of this Agreement and within one (1) year after final settlement of all claims due to Occurrences happening during the term of this Agreement. The CORPORATION shall also be permitted to inspect the books, records and payrolls of the EMPLOYER at any reasonable time during the period of this Agreement and for a reasonable time thereafter, to determine the Manual or Standard Premium.

### O. Other Insurance

If the EMPLOYER carries other valid and collectible insurance, reinsurance or indemnity with any other insurer or reinsurer covering a Loss also covered by this Agreement (other than insurance or reinsurance that is purchased to apply in excess of the sum of the Self-Insured Retention and the Maximum Limits of Indemnity hereunder), the insurance afforded by this Agreement shall apply in excess of and shall not contribute with such other insurance or reinsurance.

### P. Commutation

Beginning thirty-six (36) months after receipt of notice by the CORPORATION of a claim, the CORPORATION may then, or at any time thereafter, submit such claim for commutation. If the CORPORATION so elects, the claim shall be submitted to an actuary or appraiser to be mutually appointed by the CORPORATION and the EMPLOYER; or, should the CORPORATION and the EMPLOYER fail to agree upon an actuary or appraiser, then each party shall select an actuary or appraiser who shall then select an independent actuary or appraiser who shall fix a lump sum amount, and the CORPORATION, at its option, may pay the lump sum amount, which payment shall constitute a full and final release of the CORPORATION'S liability for such claim. However, such lump sum payment shall not constitute a full and final release of the CORPORATION'S liability if, subsequent to such lump sum payment, any supplemental award is made increasing the amount of benefits payable to the Employee and his/her dependents, and any additional liability, at the CORPORATION's election, may immediately be commuted via the process above and the CORPORATION may discharge any additional liability by payment of another lump sum.

### Q. Subrogation

The EMPLOYER agrees to prosecute any and all valid claims the EMPLOYER may have against third parties, arising out of any Occurrence, resulting in payment of a Loss by the EMPLOYER and return to the Loss Fund any amount so recovered, less the expense of collecting such amounts, not to exceed twenty-five percent (25%) of the amount collected.

Should the EMPLOYER fail to prosecute any valid claim against third parties, and the CORPORATION be liable for Loss to the EMPLOYER, the CORPORATION shall be subrogated to all rights of the EMPLOYER. Any amounts recovered by the CORPORATION shall be used to pay the expenses of collection and reimburse the CORPORATION for any amount it may have paid the EMPLOYER for the Liability Period concerned and all remaining amounts collected shall be paid the EMPLOYER.

### R. Arbitration

Any unresolved dispute arising between the EMPLOYER and the CORPORATION may be submitted to arbitration upon informed consent by both parties. It is agreed that upon submission of such dispute to arbitration, the

award may be entered as a judgment in a court of competent jurisdiction.

One arbitrator shall be chosen by the CORPORATION, and one arbitrator shall be chosen by the EMPLOYER. The third arbitrator shall be chosen by the other two arbitrators within ten (10) days after they have been appointed. If the two arbitrators cannot agree upon a third arbitrator, each arbitrator shall nominate three persons of whom the other shall reject two. The third arbitrator shall then be chosen by drawing lots. If either party fails to choose an arbitrator within thirty (30) days after receiving the written request of the other party to do so, the latter shall choose both arbitrators, who shall choose the third arbitrator. The arbitrators shall be impartial and shall be present or former officials of property or casualty insurance or reinsurance companies.

The party requesting arbitration (the "Petitioner") shall submit its brief to the arbitrators within thirty (30) days after notice of the selection of the third arbitrator. Upon receipt of the Petitioner's brief, the other party (the "Respondent") shall have thirty (30) days to file a reply brief. Upon receipt of the Respondent's brief, the Petitioner shall have twenty (20) days to file a rebuttal brief. Respondent shall have twenty (20) days from the receipt of the Petitioner's rebuttal brief to file its rebuttal brief. The arbitrators may extend the time for filing of briefs at the request of either party.

The arbitrators are relieved from judicial formalities and, in addition to considering the rules of law and the customs and practices of the insurance and reinsurance business, shall make their award with a view to effecting the intent of this Agreement. The costs of arbitration, including the fees of the arbitrators, shall be shared equally unless the arbitrators decide otherwise. The arbitration shall be held in St. Louis County, Missouri unless otherwise agreed.

If more than one EMPLOYER is involved in the same dispute, all such EMPLOYERS shall constitute and act as one party for purposes of this clause and communications shall be made by the CORPORATION to each of the EMPLOYERS constituting the one party; provided, however, that nothing therein shall impair the rights of such EMPLOYERS to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the EMPLOYERS under the terms of this Agreement from several to joint.

### S. Change in Agreement

No condition, provision or declaration of this Agreement shall be waived or altered at any time, except as specified in Section H, nor shall any assignment of interest bind the CORPORATION except by endorsement signed by the President or a Vice President and the Secretary or an Assistant Secretary of the CORPORATION.

This Agreement hereby terminates, supersedes and replaces all previously issued Workers' Compensation Insurance or Reinsurance Agreements, as amended, between the EMPLOYER and the CORPORATION.

### T. Cancellation

This Agreement may be cancelled at the close of any calendar month by either party giving the other party written notice not less than sixty (60) days prior to the date of cancellation, except, that if the CORPORATION cancels for non-payment of any premium, the cancellation shall become effective five (5) days after dispatch of notice by the CORPORATION. The date of cancellation then becomes the termination date of the final Liability Period. This Agreement does not apply to Loss as a result of Occurrences taking place after the effective date of such cancellation.

If cancellation be effected by the EMPLOYER, the Manual or Standard Premium shall be determined by the short rate tables used for casualty insurance, and the Loss Fund and Earned Premium shall be the product of the Loss Fund Percentage (Item 9) and the Premium Rate (Item 12) respectively, times the Manual or Standard Premium so arrived at, but not less than the Minimum Loss Fund and the Minimum Premium specified in the Declarations.

If cancellation be effected by the CORPORATION for non-payment of premium, the EMPLOYER shall pay the CORPORATION Earned Premium for the period up to the date of cancellation, but the Loss Fund shall be computed upon the same basis as provided in the event the EMPLOYER cancels.

If the CORPORATION cancels for any other reason, the Manual or Standard Premium shall be determined upon a pro-rata basis and the Loss Fund and Earned Premium adjusted in accordance therewith.

### U. Acceptance

By acceptance of this Agreement the EMPLOYER agrees that the statements in this Agreement, Declarations and the application are the EMPLOYER's representations; that this Agreement is issued in reliance upon such representation; that this Agreement embodies all agreements existing between the EMPLOYER and the CORPORATION, or any of its agents, relating to this excess insurance, and that full compliance by the EMPLOYER with all terms of this Agreement is a condition precedent to the CORPORATION'S liability hereunder.

### V. Mutual Policy Conditions

The EMPLOYER named herein, is by virtue of this Agreement, a member of the SAFETY MUTUAL CASUALTY CORPORATION and is entitled to vote either in person or by proxy at any and all members meetings of the CORPORATION and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined. The Annual Meeting is held at the Home Office of the CORPORATION, located at 1034 S. Brentwood Blvd., St. Louis, Missouri 63117, at 11:30 A.M., on the fourth Tuesday of April each year. This agreement is non-assessable.

IN WITNESS WHEREOF, the SAFETY MUTUAL CASUALTY CORPORATION has caused this Agreement to be executed and attested by its Executive Officers on

this _____30th_____ day of

_____June, 1986_____

_____
President

_____
Secretary

Resident Agent Countersignature: Continental Group Agency
(Chapter 680A-300)          By: _____

−1349−NV

# DECLARATIONS

Item 1.  Employer ___ CLARK COUNTY, NEVADA _____

Address ___ 225 Bridger Avenue, Las Vegas, Nevada  89155 _____

Item 2.  This Agreement covers all business operations of the EMPLOYER as a Self-Insurer in the following jurisdiction(s):
STATE OF NEVADA

Item 3.  Effective Date: 12:01 A.M. _June 30, 1986_____

Item 4.  Anniversary Date: 12:01 A.M. _June 30, 1987 and continue for 12 consecutive months thereafter_

Item 5.  The Service Company shall be ___ Beaver Pacific of Las Vegas, Nevada _____

| Item 6. | CLASSIFICATIONS OF OPERATIONS | Code Number | Estimated Total Annual Remuneration/ Manhours | Rate Per $100 Remuneration/ Manhours | Estimated Premium |
|---|---|---|---|---|---|
| | Municipal Employees | 6102 | $49,900,000. | To be determined upon audit in accordance with Published Rates | |
| | Firemen-County | 0902 | 10,350,000. | | |
| | Volunteer Firemen | 6201 | 2,800,000. | | |
| | Library Districts | 6308 | 200,000. | | |
| | | | $63,250,000. | | |

Total Estimated Manual Premium $ 1,941,220.00

SMCC Experience Modification Factor 1.00

Total Estimated Standard Premium $ 1,941,220.00

Specific Excess Insurance

Item 7.  Self-Insured Retention Per Occurrence $ 250,000.00

Item 8.  (a) Maximum Limit of Indemnity Per Occurrence $ 2,000,000.00

(b) Employers Liability Maximum Limit of Indemnity Per Occurrence (See End. #1) $ 250,000.00

Aggregate Excess Insurance

Item 9.  Loss Fund Percentage 125 %

Item 10.  Minimum Loss Fund for the Liability Period $ 2,400,000.00

Item 11.  Maximum Limit of Indemnity of the CORPORATION for the Liability Period $ 2,000,000.00

Other Terms

Item 12.  Premium Rate ___ 4.5% of Annual Standard Premium _____

Item 13.  Minimum Premium for the Liability Period $ 80,000.00

Item 14.  Deposit Premium for the Payroll Reporting Period $ 87,350.00

Item 15.  Payroll Reporting Period ___ Annually, as of June 30th _____

SAFETY MUTUAL CASUALTY CORPORATION

Secretary

ENDORSEMENT #1

EMPLOYERS LIABILITY PER OCCURRENCE AND AGGREGATE MAXIMUM LIMITS OF LIABILITY

Effective 12:01 A.M., Local Time, June 30, 1986

In consideration of the payment of premium and adherence by both parties to the terms of this Agreement, it is hereby understood and agreed as follows:

Section B.-Specific Excess Insurance, is amended to include:

With respect to each Occurrence taking place within a Liability Period, the CORPORATION agrees to reimburse the EMPLOYER against Loss in excess of the Self-Insured Retention Per Occurrence, subject to the Employers Liability Maximum Limit of Indemnity Per Occurrence, as specified in Item 8 (b) of the Declarations, as amended, and further subject to an Employer Liability Aggregate Maximum Limit of Liability of $250,000.00 with respect to all Occurrences taking place within the Liability Period.

All other terms, conditions, agreements and stipulations remain unchanged.

Attached to and forming a part of Excess Workers' Compensation Insurance Agreement No. SP-1349-NV, issued by SAFETY MUTUAL CASUALTY CORPORATION of St. Louis, Missouri, to CLARK COUNTY, NEVADA of Las Vegas, Nevada, dated June 30, 1986.

SAFETY MUTUAL CASUALTY CORPORATION

President

Secretary

SP/AG/AGC-BLK-185

ENDORSEMENT #2

SERVICE OF PROCESS

Effective 12:01 A.M., Local Time, June 30, 1986

In consideration of the payment of premium and adherence by both parties

to the terms of this Agreement, it is hereby understood and agreed as follows:

SAFETY MUTUAL CASUALTY CORPORATION has appointed the Commissioner
of Insurance of the State of Nevada as its lawful attorney upon
whom all lawful process in any action or legal proceeding against
SAFETY MUTUAL CASUALTY CORPORATION on this contract may be served.

The Commissioner may forward any such legal process to:

SAFETY MUTUAL CASUALTY CORPORATION
Mr. T. T. Schoeninger, General Counsel
1034 S. Brentwood Blvd.
St. Louis, MO 63117

All other terms, conditions, agreements and stipulations remain unchanged.

Attached to and forming a part of Excess Workers' Compensation

Insurance Agreement No. SP-1349-NV, issued by SAFETY MUTUAL CASUALTY

CORPORATION of St. Louis, Missouri, to CLARK COUNTY, NEVADA of Las Vegas,

Nevada, dated June 30, 1986.

SAFETY MUTUAL CASUALTY CORPORATION

President

Secretary

SP/AG/AGC-NV-SOP-185

ENDORSEMENT #3

Anniversary Change

Effective 12:01 A.M., Local Time, June 30, 1987

In consideration of the payment of the Deposit Premium of One Hundred Ten Thousand One Hundred Seventy Dollars ($110,170.00), and adherence by both parties to the terms of this Agreement, it is hereby understood and agreed that this Agreement is amended to read as follows:

DECLARATIONS:

Item 5.  Service Company:  BPC Risk Management Services of Las Vegas, Nevada

Item 6.

| Code Number | Est. Total Remuneration/ Manhours | Rate Per $100. Remuneration/ Manhours | Estimated Premium |
|---|---|---|---|
| 6102 | $54,000,000. | To be determined upon audit in accordance with Published Rates | |
| 0902 | 10,550,000. | | |
| 6201 | 3,100,000. | | |
| 6308 | 225,000. | | |

| | |
|---|---|
| Total Estimated Manual Premium | $2,003,115.00 |
| SMCC Experience Modification Factor | 1.00 |
| Total Estimated Standard Premium | $2,003,115.00 |

Item 10.  Minimum Loss Fund for the Liability Period: $2,500,000.00

Item 12.  Premium Rate:  5.5% of Annual Standard Premium

Item 13.  Minimum Premium for the Liability Period: $105,000.00

Item 14.  Deposit Premium for the Payroll Reporting Period:  $110,170.00

All other terms, conditions, agreements and stipulations remain unchanged.

Attached to and forming a part of Specific Excess and Aggregate Excess Workers' Compensation Insurance Agreement No. AGC-1349-NV, issued by SAFETY MUTUAL CASUALTY CORPORATION of St. Louis, Missouri, to CLARK COUNTY, NEVADA, of Las Vegas, Nevada, dated June 30, 1986.

SAFETY MUTUAL CASUALTY CORPORATION

President

Secretary

Resident Agent Countersignature: Continental Group Agency
(Chapter 680A-300)                    By:_____

AGC AC1 185

ENDORSEMENT #4

GENERAL CHANGE

Effective 12:01 A.M., Local Time, June 30, 1988

In consideration of the payment of the Deposit Premium of One Hundred Forty-Five Thousand Eight Hundred Ten Dollars ($145,810.00), and adherence by both parties to the terms of this Agreement, it is hereby understood and agreed that this Agreement is amended to read as follows:

DECLARATIONS:

| Item 6. | Code Number | Est. Total Remuneration/ Manhours | Rate Per $100. Remuneration/ Manhours | Estimated Premium |
|---|---|---|---|---|
| | 6102 | $76,234,447. | To be determined | |
| | 0902 | 15,139,567. | upon audit in | |
| | 6201 | 2,775,600. | accordance with | |
| | 6308 | 144,682. | Published Rates | |

| | |
|---|---|
| Total Estimated Manual Premium | $2,651,160.00 |
| SMCC Experience Modification Factor | 1.00 |
| Total Estimated Standard Premium | $2,651,160.00 |

Item 10.  Minimum Loss Fund for the Liability Period:  $3,000,000.00

Item 13.  Minimum Premium for the Liability Period:  $138,500.00

Item 14.  Deposit Premium for the Payroll Reporting Period:  $145,810.00

All other terms, conditions, agreements and stipulations remain unchanged.

Attached to and forming a part of Specific Excess and Aggregate Excess Workers' Compensation Insurance Agreement No. AGC-1349-NV, issued by SAFETY MUTUAL CASUALTY CORPORATION of St. Louis, Missouri, to CLARK COUNTY, NEVADA of Las Vegas, Nevada, dated June 30, 1986.

SAFETY MUTUAL CASUALTY CORPORATION

President

Secretary

Resident Agent Countersignature:  Continental Group Agency
(Chapter 680A-300)
By:_____

AGC AC1 185

ENDORSEMENT #5

ANNIVERSARY CHANGE

Effective 12:01 A.M., Local Time, June 30, 1989

In consideration of the payment of the Deposit Premium of Two Hundred Sixteen Thousand Six Hundred Sixty Dollars ($216,660.00), and adherence by both parties to the terms of this Agreement, it is hereby understood and agreed that this Agreement is amended to read as follows:

DECLARATIONS:

| Item 6. Code Number | Est. Total Remuneration/ Manhours | Rate Per $100. Remuneration/ Manhours | Estimated Premium |
|---|---|---|---|
| 6102 | $ 83,358,415. | To be determined | |
| 0902 | 16,909,121. | upon audit in | |
| 6201 | 3,053,160. | accordance with | |
| 6308 | 194,666. | | |
| | $103,515,362.00 | | |

|  |  |
|---|---|
| Total Estimated Manual Premium | $3,494,480.00 |
| SMCC Experience Modification Factor | 1.00 |
| Total Estimated Standard Premium | $3,494,480.00 |

Item 10.  Minimum Loss Fund for the Liability Period:  $4,000,000.00

Item 12.  Premium Rate:  6.2% of Annual Standard Premium

Item 13.  Minimum Premium for the Liability Period:  $210,000.00

Item 14.  Deposit Premium for the Payroll Reporting Period:  $216,660.00

All other terms, conditions, agreements and stipulations remain unchanged.

Attached to and forming a part of Specific Excess and Aggregate Excess Workers' Compensation Insurance Agreement No. AGC-1349-NV, issued by SAFETY MUTUAL CASUALTY CORPORATION of St. Louis, Missouri, to CLARK COUNTY, NEVADA of Las Vegas, Nevada, dated June 30, 1986.

SAFETY MUTUAL CASUALTY CORPORATION


President

Secretary

Resident Agent Countersignature:    Continental Group Agency
(Chapter 680A-300)

By: _____